**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**NORTHERN DIVISION**

| | |
|---|---|
| CITY OF BALTIMORE, *ex rel.* Ebony Thompson,<br><br>*Plaintiff*,<br>v.<br><br>KALSHIEX LLC, et al.,<br><br>*Defendants*. | Case No: 1:26-cv-3217<br><br>Hon. Adam B. Abelson |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO REMAND**

The City of Baltimore (the "City") brought this action under the Baltimore Consumer Protection Ordinance ("CPO") in the Circuit Court for Baltimore City against KalshiEX LLC and Kalshi Inc. (together, "Kalshi") for deceptively and unfairly operating a sports gambling enterprise in Baltimore in disregard of Maryland's regulatory regime. Kalshi has removed on diversity grounds and on the grounds that the City's municipal claims raise substantial federal questions.

The Court should abstain from exercising its diversity jurisdiction under the *Burford* doctrine. *See Burford v. Sun Oil Co.*, 319 U.S. 315, 332-23 (1943). The Fourth Circuit, and more recently, Judge Gallagher in this District, have held that federal courts should abstain from adjudicating matters that will impact a state's sovereign efforts to establish a coherent gambling policy. *See Johnson v. Collins Ent. Co.,* 199 F.3d 710 (4th Cir. 1999); *City of Baltimore ex rel. Thompson v. DraftKings Inc., et al.*, No. 1:25-cv-01487-SAG, 2025 WL 3151929 (D. Md. Nov. 10, 2025). Resolution of this case will do just that, as it will require a federal court to be the first court to opine on whether Kalshi is engaged in sports gambling, as defined under Maryland law,

and whether Kalshi's operation of a sports gambling enterprise outside of Maryland's regulatory regime constitutes an unfair act under the Baltimore Consumer Protection Ordinance, and by extension, the Maryland Consumer Practices Act.

The Court does not have original jurisdiction over the City's municipal law claims because the claims do not necessarily raise a federal issue. *See Gunn v. Minton*, 548 U.S. 251, 258 (2013) (a state law claim must *necessarily* raise a federal issue to support substantial federal-question jurisdiction). In recent months, Courts have consistently rejected Kalshi's attempts at removal on the grounds it relies upon here—that state law claims implicate its position, its *defense*, that the Commodity Exchange Act ("CEA") purportedly preempts state gambling laws. *See Nessel v. KalshiEx, LLC*, No. 1:26-cv-731 (W.D. Mich. June 25, 2026) (Dkt. No. 20); *Ohio Gambling Recovery, LLC v. Kalshi Inc.*, No. 4:25-CV-1573, 2026 WL 865788 (N.D. Ohio Mar. 30, 2026); *Washington v. KalshiEX, LLC*, No. C26-1062-JCC, 2026 WL 1217743 (W.D. Wash. May 5, 2026); *Kentucky Gambling Recovery LLC v. Kalshi Inc.*, No. 3:25-cv-00054-GFVT, 2026 WL 596107 (E.D. Ky. Mar. 4, 2026); *Nevada ex rel. Nevada Gaming Control Bd. v. KalshiEX, LLC*, No. 2:26-cv-00406-MMD-MDC, 2026 WL 579364 (D. Nev. Mar. 2, 2026); *Massachusetts v. KalshiEX LLC*, No. 1:25-cv-12595 (D. Mass. Oct. 28, 2025) (Dkt. No. 34).

## FACTUAL BACKGROUND

### I. THE STATE OF MARYLAND LEGALIZES AND REGULATES SPORTS BETTING.

For decades, Maryland, like most states after the 1992 passage of the Professional and Amateur Sports Protection Act ("PAPSA"), 28 U.S.C. § 3701, prohibited sports betting. That changed in 2018, when the United States Supreme Court struck down PAPSA in *Murphy v. National Collegiate Athletic Association*, 138 S. Ct. 1461 (2018), and in 2020, when Maryland voters approved a constitutional amendment authorizing sports betting, Md. Const. Art. XIX,

§ 1(e) (2020). Compl. ¶ 26, ECF No. 2. The General Assembly subsequently enacted comprehensive sports betting legislation, creating an intricate regulatory framework overseen by the Maryland Lottery and Gaming Control Commission. Md. Code Ann., State Gov't §§ 9-1E-01 *et seq*. *Id.* at ¶¶ 26-32.

This wasn't a casual policy choice. Maryland spent years studying other states' experiences, balancing competing interests, and crafting regulations that would generate revenue while also protecting consumers. *Id.* at ¶¶ 27-36.[1] The resulting legislative framework addresses a range of issues, including licensing requirements, advertising standards, and resources for problem gambling. *See, e.g.*, Md. Code Ann., State Gov't §§ 9-1E-05 (licensing), 9-1E-08 (license denial, fines, suspension), 9-1E-17 (advertising restrictions). *Id.* at ¶¶ 29-32. From there, the Maryland Lottery and Gaming Control Agency promulgated extensive regulations touching on all aspects of mobile sports betting, including provider applications, qualifications, license denials, enforcement actions, inspections, voluntary exclusion programs, mandatory exclusion programs, problem gambler programs and related funding, responsible gaming plans, taxes, fees, penalties, and internal controls. *See* COMAR Chapter 36, Subtitle 10.[2]

## II. KALSHI OFFERS SPORTS BETTING IN DISREGARD OF MARYLAND'S GAMBLING FRAMEWORK.

Kalshi, a CFTC Designated Contract Market ("DCM"), offers what it calls "event contracts" through its website and mobile application. Through these "event contracts," Kalshi

---

[1] *See also* Legal Sports Report, *A Look Back at the Long and Winding Road to Maryland Online Sports Betting*, available at: https://www.legalsportsreport.com /90843/history-of-maryland-sports-betting-launch/ (last accessed on June 3, 2025).

[2] Maryland Lottery and Gaming Commission, *Sports Wagering Regulations*, available at: https://www.mdgaming.com/maryland-sports-wagering/sports-wagering-regulations/ (last accessed on June 3, 2025).

users can wager on the outcome events ranging from entertainment and political to economic and weather-related events. Compl. ¶¶ 57-60, ECF No. 2. But the most popular wagers—which accounted for 89% of Kalshi's fees in 2025—are wagers on various sporting event outcomes. *See Id.* at ¶¶ 53, 66-67. This is sports gambling by any definition; and, in particular, it is sports gambling as defined under Maryland law. Kalshi, however, is not licensed or authorized to conduct a sports gambling operation in Maryland. *Id.* at ¶¶ 39, 48-49.

## III. THE CITY FILES ITS ENFORCEMENT ACTION.

The City filed this action on August 13, 2026, in the Circuit Court for Baltimore City. The City alleges that Kalshi is offering unauthorized sports gambling in Baltimore, undermining Maryland's regulatory structure, and depriving the city of tax revenue from lawful sports gambling. The City's claims arise under the Baltimore Consumer Protection Ordinance, Baltimore City Code Art. 2 § 4, *et seq*. *Id.* ¶¶ 124-126. Specifically, the City claims that Kalshi has "conveyed the false, deceptive, and misleading impression that the sports wagers they offer through their prediction market are lawful in Maryland" (Count 1), and that Kalshi's unauthorized sports gambling is an unfair practice that has caused consumer and competitive harm (Count 2). Both claims are premised on the allegation that Kalshi's sports event contracts constitute "sports wagering" under Maryland law. Compl. ¶ 3.

## LEGAL STANDARD

A motion to remand must be filed within 30 days after the notice of removal is served. 28 U.S.C. § 1447(c).

For an action removed on diversity grounds, a federal court must decline jurisdiction under the *Burford* abstention doctrine: "(1) when there are 'difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result

in the case then at bar'; or (2) where the 'exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of public concern.'" *New Orleans Public Service, Inc.("NOPSI") v. Council of City of New Orleans*, 491 U.S. 350, 361 (1989) (quoting *Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 813 (1976)).

When an action is removed on substantial federal question grounds, it must be remanded if the claims, as pleaded, do not *necessarily* raise a federal question. *Gunn v. Minton,* 568 U.S. 251, 258 (2013).

## ARGUMENT

Kalshi removed this action on two grounds: diversity jurisdiction under 28 U.S.C. § 1332 and substantial federal-question jurisdiction under 28 U.S.C. § 1441. Neither provides a basis for retaining this case in federal court. First, although diversity jurisdiction exists in this instance, *Burford* abstention warrants remand because federal adjudication would interfere with Maryland's efforts to regulate sports wagering and develop a coherent gambling policy. Second, Kalshi cannot establish federal-question jurisdiction because Baltimore only asserts claims under Baltimore City law, and Defendants' anticipated Commodity Exchange Act ("CEA") preemption defense is not an issue that can support removal.

### I. THE COURT SHOULD ABSTAIN FROM EXERCISING DIVERSITY JURISDICTION UNDER THE BURFORD DOCTRINE.

#### A. Federal Adjudication Would Disrupt Maryland's Comprehensive Gambling Policy.

The *Burford* doctrine furthers "the harmonious relation between state and federal authority" by prohibiting federal district courts from interfering with state efforts to address local problems through comprehensive regulatory schemes. *Burford*, 319 U.S. at 332-33 (quoting *Railroad Comm'n v. Pullman Co.*, 312 U.S. 500, 501 (1941)). As the Supreme Court

explained in *New Orleans Public Service, Inc.(“NOPSI”) v. Council of New Orleans*, 491 U.S. 350, 361 (1989), a federal court “must decline” jurisdiction “(1) when there are difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar; or (2) where the exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of public concern.” Abstention serves the “central idea . . . of simple comity.” *MLC Auto., LLC v. Town of S. Pines*, 532 F.3d 269, 280 (4th Cir. 2008). Federal courts must “respect the efforts of state governments to ensure uniform treatment of essentially local problems.” *Id*. “Where timely and adequate state-court review is available, a federal court sitting in equity must decline to interfere[.]” *NOPSI*, 491 U.S. at 361.

Here, the Court must decline jurisdiction because it would be disruptive of Maryland’s ongoing efforts to establish a coherent gambling policy. The City’s claims will require the determination of: (1) whether sports event contracts constitute “sports wagering” under Maryland law, and (2) whether Kalshi’s offering of these sports event contracts outside of Maryland’s licensing and regulatory regime constitutes an unfair practice. The answers to those questions will have a significant impact on Maryland's efforts to establish and maintain a coherent sports gambling policy. Maryland courts should be afforded the first opportunity to resolve these questions and to determine how Maryland's gambling laws and Baltimore's CPO apply to unauthorized sports event contracts.

The interplay between Maryland’s efforts to establish and maintain a coherent sports gambling policy and sports event contracts is evident from an April 7, 2025 letter sent by the Maryland Lottery and Gaming Control Commission to Kalshi. The Gaming Control

Commission asserted that sports event contracts constitute "sports wagering" under Maryland law and ordered Kalshi to cease and desist its unlicensed offerings of these wagers. The Gaming Control Commission's letter thus shows that Maryland is making affirmative efforts to ensure that unlicensed sports event contracts do not undermine its gambling regime. If this Court were to address the fundamental questions of (1) whether sports event contracts constitute "sports wagering" under Maryland law, and (2) whether Kalshi's offering of these sports event contracts outside of Maryland's licensing and regulatory regime constitutes an unfair practice, it would risk inconsistency with Maryland's position on these matters and undermine the State's sovereign right to regulate gambling in its borders.

As this Court is well aware, that letter prompted a federal court action by Kalshi. *See KalshiEx LLC v. Martin et al,* 1:25-cv-01283 (D. Md.). The fact that the *Martin* action is proceeding in federal court does not cut against *Burford* abstention, in this case. Kalshi's claim in *Martin* is simply that the Maryland Lottery and Gaming Control Commission's efforts to impose its authority on Kalshi are preempted by federal law. The action turns solely on the federal issue of preemption. It will not, at least as the docket currently stands, address the state law questions raised by this action: (1) whether sports event contracts constitute "sports wagering" under Maryland law, and (2) whether Kalshi's offering of these sports event contracts outside of Maryland's licensing and regulatory regime constitutes an unfair practice.

### B. *Burford* Abstention is Particularly Appropriate in Cases Implicating State Gambling Regulation

The Fourth Circuit has recognized that *Burford* abstention is appropriate in cases, like this one, that implicate the state's regulation of gambling, since gambling regulation lies at "the heart of the state's police power." *Johnson*, 199 F.3d at 715; *see also Helton v. Hunt*, 330 F.3d 242, 246 (4th Cir. 2003); *Casino Ventures v. Stewart*, 183 F.3d 307, 310 (4th Cir. 1999). In

*Johnson*, the court stated:

> The regulation of lotteries, betting, poker, and other games of chance touch all of the above aspects of the quality of life of state citizen. . . . The question of how best to regulate gambling activity is also one to which different states can arrive at different answers based on their different experiences. State gaming policies reflect a delicate trade-off between the economic boon of increased tax revenue and enhanced employment on the one hand and the risk of moral rot, human exploitation, and political corruption on the other. Put another way, the question is whether the maximization of individual freedom and choice works a wholesale diminution in general social well-being. Each side of this scale embodies the classic subject matter of state prerogative…because this question involved a most basic problem of South Carolina public policy, the state court system should have been permitted the first opportunity to resolve it.

*Johnson*, 199 F.3d 710, at 720.

The need for deference was underscored by the *Johnson* plaintiffs' invocation of the South Carolina Unfair Trade Practices Act ("SCUTPA"). The *Johnson* court explained that "unfair competition law is a tool that states use in an attempt to regulate vast spheres of activity with which state police power has historically been concerned," and that because the terms "unfair" and "deceptive" have "potentially broad sweep," the "meaning accorded to them will chart the course of state public policy." *Id*. at 720-21.[3]

Like the video poker at issue in *Johnson*, the sports gambling at issue here is a multi-billion-dollar industry regulated by all branches of state government and subject to a complex set of regulatory requirements implicated by the litigation. Like the plaintiffs in *Johnson*, the City here invokes an unfair trade practices act, alleging that Defendants' gambling platform is

---

[3] In this way, *Johnson* is distinguishable from a case in which the Fourth Circuit did *not* invoke Burford abstention, *Martin v. Stewart*, 499 F.3d 360, 368 (4th Cir. 2007). In *Martin*, the sole issue was whether a state gambling law was legal under the Fourteenth Amendment of the United States Constitution, a claim that was "plainly federal in origin and nature" and accordingly "independent of any state law violation." *Martin v. Stewart*, 499 F.3d 360, 368 (4th Cir. 2007).

"unfair" and "deceptive." Indeed, because Baltimore's CPO explicitly invokes the Maryland Consumer Practices Act's definition of "unfair trade practices," the interpretation of the CPO's application of the terms "unfair" and "deceptive" to sports event contracts would, as in *Johnson*, undoubtedly "chart the course of state public policy." *Johnson*, 199 F.3d at 721.

Judge Gallagher's recent decision in *DraftKings* strongly supports remand as well. *See DraftKings Inc.,* 2025 WL 3151929 at *5. In *DraftKings*, Baltimore brought a CPO enforcement action against two online sportsbooks, alleging that their platform design and marketing practices encouraged and exploited problem gambling. *Id.* at *1. After the defendants removed the case to federal court on diversity grounds, the court abstained under *Burford* and remanded. The court concluded that it was being asked to resolve "disputed questions of state law" that "powerfully impact[]" the welfare of Maryland citizens and that granting the requested relief would "effectively establish parallel federal and state oversight" of sports gambling in Maryland. 2025 WL 3151929, at *10.

Judge Gallagher further explained that federal adjudication would place the Court in the position of defining, "in the first instance, the meaning of terms like 'unfair' and 'deceptive' in the context of the growing market of online gambling" before Maryland courts had an opportunity to do so. *Id.* at *9. The court warned that doing so could leave Maryland with "a non-coherent policy" and emphasized that "Maryland's state courts are far better equipped to address, in the first instance, the complex state law issues and interests presented in this scenario." *Id.* The court concluded that Maryland must determine "how it will formulate coherent sports betting policy" and that it is "not the place of the federal courts to be dictating, manning, or influencing how those jurisdictions work through that process." *Id.* at *10. This case presents precisely the confluence of factors that led this Court to abstain in *DraftKings*.

### C. Nothing Prohibits Abstention.

#### 1. Maryland courts provide an adequate forum.

*Burford* abstention requires that state courts offer a timely and adequate review. *NOPSI*, 491 U.S. at 361. Maryland's judicial system easily satisfies this requirement. Maryland's appellate courts can provide authoritative interpretations of both state and local law. *See, e.g.*, *Bd. of Cnty. Commissioners of Washington Cnty. v. Perennial Solar, LLC,* 464 Md. 610, 612 (2019) (addressing interplay between state solar energy regulation and local zoning laws). Indeed, Maryland courts have extensive experience with consumer protection cases, *see, e.g.*, *Lloyd v. Gen. Motors Corp*., 397 Md. 108, 150 (2007) (determining that plaintiffs stated cognizable claims under Maryland's Consumer Protection Act ("CPA")), and are increasingly familiar with gambling-related issues. *See CCI Entertainment, LLC v. State,* 215 Md. App. 359, 367 (2013) (addressing state's definition of "slot machine"); *F.A.C.E. Trading, Inc. v. Todd*, 393 Md. 364, 365 (2006) (addressing legality of machine gaming); *Beyond Sys., Inc. v. Realtime Gaming Holding Co., LLC,* 388 Md. 1, 6, 878 A.2d 567, 570 (2005) (addressing online advertisements for virtual casino); *State v. One Hundred & Fifty-Eight Gaming Devices*, 304 Md. 404 (1985) (addressing state seizure of purportedly illegal gaming devices). Maryland courts can decide this matter.

#### 2. The nature of the relief sought permits federal abstention.

In addition to meeting *Burford*'s substantive requirements for abstention, the City's requests for civil penalties, restitution, and injunctive relief supports abstention under *Quackenbush v. Allstate Ins. Co.*, where the Supreme Court ruled that "federal courts have the power to dismiss or remand cases based on abstention principles only where the relief being sought is equitable or otherwise discretionary." 517 U.S. 706, 731 (1996). The City's requested

relief is equitable, or otherwise discretionary, and is not for damages. Specifically, a claim for civil penalties does not constitute a claim for damages. Civil penalties vindicate public policy, deter future violations, and fund enforcement efforts. *See, e.g., Alig v. Quicken Loans Inc.*, No. 5:12-CV-114, 2017 WL 5054287, at *28 (N.D.W. Va. July 11, 2017) (collecting cases and analyzing West Virginia's Consumer Protection Act, recognizing that "an award of civil penalties is not conditioned on an award of actual damages."). They represent the government's sovereign interest in protecting its citizens, not a party's interest in recovering losses. The requested civil penalties are also "discretionary." *Quackenbush*, 517 U.S. at 731. The CPO provides that violators are subject to "a civil penalty of *not more* than $1,000" per violation. Balt. City Code Art. 2, § 4-3(a)-(c) (emphasis added).

## II. KALSHI CANNOT REMOVE ON FEDERAL-QUESTION GROUNDS

Kalshi's removal under the federal-question removal statute is improper because the City has not asserted any federal causes of action. It has only asserted causes of action arising under Baltimore and Maryland law. This civil action, therefore, plainly does not fall within the ordinary exercise of the federal district court's original jurisdiction.

Federal courts may exercise original jurisdiction under 28 U.S.C. § 1331 over actions asserting only state law claims only if the claim "necessarily raise[s] a stated federal issue." *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. at 312, 314 (2005). This is a "special and small category" of cases, *Empire Healthchoice Assur., Inc. v. McVeigh*, 547 U.S. 677, 699 (2006), and its application is severely constrained by the "well pleaded complaint" rule. *Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Tr. for S. California*, 463 U.S. 1, 9 (1983).

Under the "well pleaded complaint" rule, a federal district court's original jurisdiction (i.e., whether a case arises under federal law) "must be determined from what necessarily appears in the

plaintiff's statement of his own claim in the bill or declaration, unaided by anything alleged in anticipation of avoidance of defenses which it is thought the defendant may interpose." *Id.* at 10. (quoting *Taylor v. Anderson*, 234 U.S. 74, 75–76 (1914)). Thus, even when it is "very likely, in the course of the litigation, a question under the Constitution would arise, [this] does not show that the suit, that is, the plaintiff's original cause of action, arises under the Constitution." *Id.* (quoting *Louisville & Nashville R. Co. v. Mottley,* 211 U.S. 149, 152 (1908)). Rather, "[a] right or immunity created by the Constitution or laws of the United States must be an element, and an essential one, of the plaintiff's cause of action." *Id.* at 11. (quoting *Gully v. First National Bank,* 299 U.S. 109, 112 (1936)).

The City's claims do not necessarily raise any issue of federal law. The City alleges that Kalshi's sports-event contracts constitute unauthorized sports wagering under Maryland law and that Kalshi's conduct violates the Baltimore CPO. *See* Compl., ECF No. 2. The City's claims do not invoke federal law, and the City can succeed on all of its claims without invoking federal law. Federal law is not a necessary element of the City's claims; and, thus, the City's claims do not fall into the "small and special" category of cases where a court has original jurisdiction over state-law claims. *Empire Healthchoice Assur., Inc.*, 547 U.S. at 699. The City's claims arise under the laws of Baltimore and Maryland; they do not "aris[e] under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. If, suddenly, the CEA or CFTC were to cease to exist, the City's claims would remain viable and unaltered. Kalshi misconstrues the City's claims as being predicated on the assertion that Kalshi's sports event contracts are unauthorized by federal law. Notice of Removal ¶ 47, ECF No. 1. The City's claims, however, are predicated on the assertion that Kalshi's sports event contracts are unauthorized by *Maryland* and *Baltimore* law. *See, e.g.* Compl. at ¶¶ 39, 86-89, ECF No. 2. Federal law only comes into play if its authorization

trumps whatever Maryland has to say about Kalshi's sports event contracts. In other words, Kalshi may have a preemption defense.

It is "settled law," however, that a case may *not* be removed to federal court on the basis of a federal defense, including the defense of pre-emption, even if the defense is anticipated in the plaintiff's complaint, and even if both parties concede that the federal defense is the only question truly at issue." *Caterpillar v. Williams*, 482 U.S. 386, 393 (1987). Thus, even though there can be little doubt that Kalshi is going to argue that the federal CEA should be interpreted in a way that preempts the City's claims, this federal defense is not an essential element of the City's claims and, therefore, cannot form the basis for this Court's original jurisdiction.

Nor does the Complaint's reference to the Federal Trade Commission Act necessarily raise a federal question. *See* Notice of Removal ¶ 45. Baltimore's CPO incorporates the Maryland Consumer Protection Act, which instructs courts to give "due consideration and weight" to FTC interpretations when construing unfair or deceptive trade practices. Compl. ¶ 139, ECF No. 2. The FTC Act is no more than a source of persuasive authority incorporated by state law. Thus, the City need not establish a violation of the FTC Act to prevail on its CPO claims. And, even if it did, the Notice of Removal fails to explain how the question of whether Kalshi is acting unfairly by offering sports gambling outside of Maryland's regulatory regime is a "substantial" federal issue that has importance to the "federal system as a whole." *Gunn*, 568 U.S. at 260. For that reason, too, substantial federal question jurisdiction is unavailable to Kalshi.

## **CONCLUSION**

This action arises under Baltimore and Maryland law and requires resolution of unresolved questions concerning online sports gambling in Maryland. Lacking federal-question jurisdiction and in accordance with the *Burford* doctrine, the Court should remand

this action to the Circuit Court for Baltimore City.

Dated: September 14, 2026

By: /s/ Sara Gross____

Ebony M. Thompson, City Solicitor
Sara Gross
Thomas P.G. Webb
**BALTIMORE CITY LAW DEPARTMENT**
100 N. Holliday Street, Suite 101
Baltimore, MD 21202
ebony.thompson@baltimorecity.gov
sara.gross@baltimorecity.gov
tom.webb@baltimorecity.gov

Adam J. Levitt
Daniel R. Ferri*
Joseph Nelson*
Andrea Shang*
**DICELLO LEVITT LLP**
Ten North Dearborn Street, Sixth Floor
Chicago, Illinois 60602
Tel: (312) 214-7900
alevitt@dicellolevitt.com
dferri@dicellolevitt.com
jnelson@dicellolevitt.com
ashang@dicellolevitt.com

**pro hac vice motions to be filed*

***Counsel for Plaintiff***